UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JANET E. LEWIS, | ) | CASE NO. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT** |
| | ) | |
| MICHAEL SISK, MD, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

COMES NOW the Plaintiff, Janet E. Lewis, and for her cause of action against the Defendant, Michael Sisk, M.D., alleges and states as follows:

**PARTIES**

1. The Plaintiff, Janet E. Lewis, at all times material to her cause of action, was a resident of Sidney, Cheyenne County, Nebraska.

2. At all times material hereto, the Defendant Michael Sisk, M.D. was a physician, licensed to practice medicine in the State of Nebraska, who conducts his principle place of business in Steamboat Springs, Routt County, Nebraska and who specializes in orthopedic surgery.

3. At all times material, a caretaker/patient relationship existed between the Defendant and the Plaintiff. The Defendant held themselves out to the public and specifically, the Plaintiff, as possessing specific knowledge, skill and training in the diagnosis and treatment of the medical conditions such as that developed by the Plaintiff.

4. At all times material, the care, management and control of medical services to the Plaintiff, during the time of her hospitalization and surgery on September 25, 2014, through and including visits on September 29, 2014, October 9, 2014, October 20, 2014, December 8, 2014, February 8, 2015 (further surgery on the knee), April 30, 2015, and June 25, 2015 (when the Defendant recommends surgery to remove the knee replacement and replacing it).

5. All of these visits were for follow up and treatment of complications related to infection following plaintiff's September 25, 2014 knee replacement surgery.

6. During these seven months, Defendant continued to fail to meet the standard of care for Ms. Lewis, as will be discussed more fully below, and thus should be considered an ongoing breach.

7. All of these visits occurred in Sydney, Cheyenne County, Nebraska.

## JURISDICTION AND VENUE

8. Federal jurisdiction is proper in this case due to diversity of citizenship.

9. Federal jurisdiction is proper in this case as the amount in controversy exceeds $75,000, exclusive of interest and costs.

10. Venue in the District of Nebraska is proper as a substantial part of the events giving rise to this claim occurred in Nebraska.

## DUTY

11. Defendant, Dr. Michael Sisk, at all times relevant to this matter had a duty to possess and use the care, skill and knowledge ordinarily possessed and used under like circumstances by other orthopedic surgeons engaged in a similar practice in the same or similar localities.

12. This duty included consideration and adequate control of Ms. Lewis' A1 C and having her diabetes under control

13. This duty included providing IV antibiotics before, during and after the surgery of September 25, 2014.

14. This duty included providing antibiotics to a diabetic knee-replacement patient who shows signs of skin wounds development.

15. This duty included investigation for causes of any delay in rehabilitation, unusual limitations of motion or unexpected complaints of pain.

16. This duty included performing a staged revision of a total knee replacement when infection is diagnosed more than three weeks after surgery.

17. This duty included immediate referral to an infectious disease doctor if infection is detected and not eliminated.

18. This duty included referral to an orthopedic surgeon for a second opinion if the knee replacement recovery shows significant signs of limitation or unexpected complaints of pain.

## FACTS

19. On September 25, 2014, the Defendant, Sisk, performed surgery for right total knee arthroplasty on Ms. Lewis.

20. Defendant noted that Ms. Lewis was allergic to multiple metals and Defendant ordered a gold plated knee system because of this allergy.

21. Records fail to show that any preoperative antibiotics were ordered by Defendant for Ms. Lewis.

22. Records fail to show that any preoperative antibiotics were administered at Defendant's direction, for Ms. Lewis.

23. Defendant saw Ms. Lewis in a follow up visit on September 29, 2014, at which time the patient had fracture blisters around the incisional site.

24. Defendant noted that the blisters were due to Aquacel dressing being placed on the knee after Ms. Lewis' surgery.

25. Aquacel dressings contain silver.

26. Defendant chose to care for the blisters with a change of dressing.

27. Defendant next saw Ms. Lewis on October 9, 2014 and noted that the blisters were resolving "no evidence of infection" and that some of Ms. Lewis' staples were removed.

28. After removal of the staples, Ms. Lewis had a wound VAC placed for three weeks to aid closure of the skin.

29. On October 30, 2014, the family practice physician observed full thickness skin loss over the knee.

30. Defendant referred plaintiff to Dr. Warren Schutte, plastic and reconstructive surgeon.

31. On November 16, 2014, Dr. Schuette performed a gastroc flap surgery and skin graft.

32. Defendant continued to see Ms. Lewis thereafter.

33. On February 5, 2015, Defendant performed another surgery involving knee manipulation under anesthesia and Defendant noted at that time more redness and swelling with fluid underneath the skin.

34. Defendant attempted to aspirate but stopped before the fluid was aspirated.

35. On February 27, 2015, Defendant began to consider a "second opinion… if we cannot get more motion on our own."

36. On April 30, 2015, Defendant noted that "Janet continues to struggle with her knee."

37. In this visit, Defendant noted "She continues to have irregularities to the skin with ulcers and swelling."

38. In this visit, Defendant noted that Ms. Lewis had, "…probably the worst result I have ever seen from a total knee when you look at it altogether."

39. At this point, Defendant indicated that no further surgery was necessary.

40. On June 25, 2015, Defendant saw Ms. Lewis again with "more redness and swelling about her knee."

41. The Defendant noted in this visit that Ms. Lewis, "Over the last 3-4 days, has had an acute increase in her symptoms."

42. On this visit, the doctor noted, "I tried to aspirate this today and only got some blood. No purulent material could be removed."

43. There was no testing done on the fluid removed.

44. Ms. Lewis' general practice physician referred Ms. Lewis to a Dr. Kinder, in Colorado, for a second opinion.

45. Dr. Kinder first saw Ms. Lewis on July 6, 2015.

46. Kinder concluded in that visit that "… this looks pretty significant for infection."

47. Kinder recommended a two-stage knee surgery to remove the hardware, let the infection heal, and then a second surgery to put in new hardware.

48. On July 14, 2015, Kinder removed the old hardware, noting "gross purulence encountered" which was sent for testing.

49. Kinder noted "there was essentially almost no cement on the implant itself."

50. On September 8, 2105, Ms. Lewis had surgery to close the wound on the right knee.

51. On October 29, 2015, Kinder performed surgery on Ms. Lewis' right knee wherein an antibiotic spacer was implanted.

52. On January 14, 2016, Kinder performed a third surgery, this time to remove the antibiotic spacer and replacement of a new right knee replacement.

## BREACH

53. The Defendant Michael Sisk, M.D. fell below the standard of care in one or more of the following ways:

   a. Sisk chose not to order antibiotic medications during Ms. Lewis' original surgery on September 25, 2014 ;

   b. Sisk chose not to place Ms. Lewi on antibiotics for at least 24 hours after her surgery on September 25, 2014;

   c. Sisk chose to apply a postoperative dressing to the knee which dressing contained metal to which Ms. Lewis had an allergy;

   d. Sisk chose not to place Ms. Lewis on oral antibiotics when Sisk observed blisters around the wound to Ms. Lewis' knee;

   e. Sisk chose not to perform proper and necessary testing for deep infection with Ms. Lewis' knee;

   f. Sisk did not respond in a timely manner to the continued complaints and slow recovery of Ms. Lewis, which were warning signs of ongoing infection;

   g. Sisk chose to ignore or rule out the possibility of infection without adequate evidence; and

   h. Sisk chose to continue treating Ms. Lewis when a consult should have been sought by an infectious disease doctor or at least a second orthopedic surgeon, which consult should have been sought at least by the time the gastroc flap and skin graft procedure was performed (November 16, 2014).

## CAUSATION

54. The breach of the standard of care, as described above, by Defendant was the direct (legal) and proximate cause of harm and injury to Ms. Lewis as follows:

   a. Failed knee replacement surgery;
   b. Multiple successive surgical procedures as described above;
   c. Medical expenses;
   d. Delayed recovery;
   e. Extended medical care including physical therapy, doctor's visits, and relocation to Colorado for intensive treatment and therapy;
   f. Lost time from work;

  g. Lost wages;

  h. Future medical treatment;

  i. Future medical expenses;

  j. Future lost time from work;

  k. Future lost wages;

  l. Physical pain, stress, worry, anxiety, fear, disfigurement and suffering;

  m. Loss of mobility, independence and freedom;

  n. Future physical pain, stress, worry, anxiety, fear and suffering; and

  o. Loss of trust and confidence in the medical profession; and

  p. Permanent physical impairment and disability.

  55. The Plaintiff is informed and believes that the Defendant elected to qualify as a health care provider under the terms and provisions of the *Nebraska Hospital Medical Liability Act*, § 44-2,801 et seq. RRS 1943, as amended, and may have been qualified on the date of Plaintiff's injuries and damages. Notwithstanding the filing by the Defendant for the special benefits, privileges and protection of such Act, Plaintiff alleges that such Act is unconstitutional in whole or in part because, among other reasons, it violates Section A of the 14th Amendment of the Constitution of the United States, together with Article I, Sections 1, 3, 6, 13, 16, 21 and 26, Article II, Section 1, Article III, Section 18; Article V, Section 2, Article VI section 1 and Article XII, Section 10(c) of the Constitution of the State of Nebraska.

  56. The Plaintiff hereby affirmatively waives her rights for a medical review panel to review her claim herein against the Defendant as provided by the Nebraska Hospital-Medical Liability Act and elects to file this action directly in the United States District Court for the District of Nebraska.

  57. A copy of this Complaint is served simultaneously with the filing hereof upon the Director of the Nebraska Department of Insurance.

  58. A copy of this Complaint is served simultaneously with the filing hereof upon the Attorney General for the State of Nebraska.

  WHEREFORE, the Plaintiff prays for judgment against the Defendant for her special damages incurred to date; for any special damages incurred hereinafter; for general damages; for pain and suffering; for Plaintiff's costs herein expended; and for such other and further relief as the Court deems appropriate.

DATED this 26TH day of September, 2016.

JANET E. LEWIS, Plaintiff,

By _____
Matthew A. Lathrop, #19558
MILLER LATHROP, PC LLO
9290 West Dodge Road, Suite 100
Omaha, NE 68114
(402) 558-4900 Telephone
(402) 558-4906 Fax
mlathrop@millerlathrop.com
ATTORNEY FOR PLAINTIFF